**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
*mdb@kuzykclassactions.com*
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:    (213) 401-4100
Facsimile:    (213) 401-0311

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRYAN BIBEY and ANNE LYNN ELKIND on behalf of themselves and all others similarly situated,**<br><br>                              **Plaintiffs,**<br>v.<br><br>**TRADER JOE'S COMPANY**<br><br>                              **Defendant.** | **CASE NO.:**<br><br><u>**CLASS ACTION**</u><br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

1    Plaintiffs Bryan Bibey and Anne Lynn Elkind ("Plaintiffs"), individually and on behalf of

2  themselves and all others similarly situated, bring this class action against Defendant Trader Joes

3  Company ("Trader Joe's" or "Defendant") and on the basis of personal knowledge, information and

4  belief, and the investigation of counsel, allege as follows:

5                                          **INTRODUCTION**

6

7    1.    This is a proposed class action on behalf of California and New York classes

8  (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated

   with the advertising, labeling and sale of its Advanced Strength Probiotic Dietary Supplement

9  ("Product" or "Supplement").

10   2.    Probiotics are live microorganisms that are intended to have health benefits when

11  consumed or applied to the body. Probiotic doses are measured in terms of colony forming units

12  ("CFUs"), which represent the number of live and active micro-organisms in one serving of a

13  probiotic. For a probiotic to be effective, it must be alive when ingested. The number of colony

14  forming units directly correlates with a probiotic's viability and its ability to effectuate its stated

15  purposes (*e.g.,* digestive and immune health).

16   3.    Trader Joe's Product unequivocally states that it is an "Advanced Strength" probiotic

17  with "30 Billion CFU Per Capsule." The CFU number is bolded and offset in blue color for

18  emphasis.

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22      4.      The Supplement Fact section of the reverse side of the label reaffirms the claim on

23  the principal display panel – that Trader Joe's proprietary blend of probiotics contains "30 Billion

24  CFU."

25
26
27
28

5.      The side panel of the Product twice reconfirms the representations that the Product contains "30 Billion Colony Forming Units (CFUs) per capsule" and the explains the materiality of this ostensible fact – "This is **3 times more** CFUs compared to Trader Joe's Superior Acidophilus Complex." (emphasis added)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

6.



19    7.    Unfortunately for consumers, Trader Joe's labels claims are false and misleading in a

20 manner that renders the Product worthless or, at a minimum, materially less than what was paid for

21 it. Plaintiffs conducted analytical tests on multiple lots of Trader Joe's Product to confirm the

22 probiotic claims made on its label. The results demonstrate that the Product on average contains 8.75

23 billion or less than 70 % of its promised probiotic CFU, rendering the promise of 30 billion CFU

24 patently false.

25
26
27
28

8. As a result of this false and misleading labeling, Defendant was able to sell these Products to hundreds of thousands of unsuspecting consumers throughout California and New York.

9. Plaintiffs allege Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § l7500, *et. seq.,* California Civil Code § 1750, *et seq.*, N.Y. Gen. Bus. Law § 349 et seq.,  N.Y. Gen. Bus. Law § 350 et seq. and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Bibey is a resident of San Francisco, California, Plaintiff Elkind is a resident of Roselyn Heights, New York and Defendant Trader Joe's Company has its principal place of business in Monrovia, California. The amount in controversy exceeds $5,000,000 for the Plaintiffs and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

11. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district, and Defendant has received substantial compensation from such transactions and business activity in this judicial district.

## PARTIES

12. Plaintiff Bryan Bibey is a resident of San Francisco, California.

13. Mr. Bibey purchased Trader Joe's Advanced Strength Probiotics 5 to 7 times in between October 2023 and December 2024 from various Trader Joe's locations in San Francisco including those at 1095 Hyde Street and 3 Masonic Avenue.

14.     Mr. Bibey read and believed the representations on the Product's labels, specifically that he was purchasing and receiving a Product that contained 30 billion viable CFU of the promised probiotic strains.

15.     Mr. Bibey specifically purchased the Product relying on its label claims.

16.     Mr. Bibey believed that Defendant lawfully marketed and sold the Product.

17.     Mr. Bibey relied on Defendant's labeling and was misled thereby.

18.     Mr. Bibey would not have purchased the Product or would have purchased the Product on different terms had he known the truth about its contents.

19.     Mr. Bibey was injured in fact and lost money as a result of Defendant's improper conduct.

20.     If Mr. Bibey has occasion to believe that Defendant's marketing and labeling is truthful, non-misleading, and lawful, he would purchase the Product in the future.

21.     Plaintiff Anne Lynn Elkind is a resident of Roselyn Heights, New York.

22.     Ms. Elkind purchased Trader Joe's Advanced Strength Probiotics on a monthly basis from April 2023 to January 2024 from Trader Joe's located in Garden City New York.

23.     Ms. Elkind read and believed the representations on the Product's labels, specifically that she was purchasing and receiving a product that contained 30 billion viable CFU of the promised probiotic strains.

24.     Ms. Elkind specifically purchased the Product relying on its label claims.

25.     Ms. Elkind believed that Defendant lawfully marketed and sold the Product.

26.     Ms. Elkind relied on Defendant's labeling and was misled thereby.

27.     Ms. Elkind would not have purchased the Product, or would have purchased the Product on different terms had she known the truth about its contents.

28.     Ms. Elkind was injured in fact and lost money as a result of Defendant's improper conduct.

29.     If Ms. Elkind has occasion to believe that Defendant's marketing and labeling is truthful, non-misleading, and lawful, she would purchase the Product in the future.

30.    Defendant Trader Joe's Company is an American grocery store chain headquartered in Monrovia, California, with close to 600 locations across the U.S. Among other products, it markets and sells a line of dietary supplements, including the Advanced Strength Probiotic at issue here, under the Trader Joe's brand name.

## ALLEGATIONS

### A.    Probiotic CFU Claims Are Highly Material To Reasonable Consumers

31.    "Probiotics are live microorganisms that are intended to have health benefits when consumed or applied to the body" [1] They often are referred to as good bacteria in the gut and compete with bad bacteria to support the body in establishing optimal digestion and aid immune function.[2]

32.    Critically, for a probiotic to be effective, it must be: (a) alive when ingested, and (b) a strain that has been clinically studied and proven to provide the particular sought after benefits. Probiotic doses are measured in terms of colony forming units, which represent the number of live and active micro-organisms in one serving of a probiotic. Probiotics are identified by their specific strain, which includes the genus, the species, and the subspecies. Through this identification process specific strains can be linked with their specific effects.[3]

---

[1] Probiotics: What You Need to Know, National Center for Complementary and Integrative Health, U.S. Department of Health and Human Services. Available at https://www.nccih.nih.gov/health/probiotics-what-you-need-to-know (last visited September 12, 2025)

[2] An Introduction to Probiotics, Mayo Clinic Health System, July 13, 2022. Available at https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/an-introduction-to-probiotics. (last visited September 12, 2025)

[3] Goldman, E. (Ed.), Green, L. (Ed.). (2015). Practical Handbook of Microbiology, Third Edition. Boca Raton: CRC Press. A colony forming unit, or CFU, is a measurement of viable microbial cells that are capable of replicating on agar plates and forming colonies which are then counted.

33.     As a result of "shifting dietary preferences toward healthier foods coupled with []
rising consumer awareness about digestive health products," probiotics as well as food/drink with
probiotic content have become increasingly popular.[4]

34.     Most recently, "a range of factors have driven the continuing growth in demand for
gut health solutions generally, and for probiotics in particular. Demographic changes such as
population aging and lifestyle choices have increased the prevalence of digestive disorders, while the
pandemic has accelerated the shift towards more proactive approaches to health. As a result,
consumers want to see functional ingredients in their favorite food and beverage products, and
they're increasingly well educated about the role of probiotics and their ability to support both
digestive health and overall wellness."[5]

35.     As a result, the global market for probiotics is expected to reach $220 billion by 2030
up from an estimated 77 billion in 2022. [6]

36.     In a global survey of more than 15,000 consumers, more than 75% indicated that they
were familiar with probiotics and when asked why they consume food products with probiotics, the
most popular answers were to promote gut and immune health.[7] The majority said they consumed
foods with probiotics to improve their intestinal tract, improve intestinal flora, and to improve their

---

[4] Grand View Research, Probiotics Market Size, Share & Trends Analysis Report By Product (Food & Beverages, Dietary Supplements), By Ingredient (Bacteria, Yeast), By Distribution Channel, By End-use, By Region, And Segment Forecasts, 2023 – 2030. Available at https://www.grandviewresearch.com/industry-analysis/probiotics-market (last visited March 20, 2023).

[5] Nutra Ingredients USA, *Survey: 1 in 4 global consumers used probiotics in last six month*s, August 12, 2021. Available at https://www.nutraingredients-usa.com/Article/2021/08/12/Survey-1-in-4-global-consumers-used-probiotics-in-last-6-months (last visited March 20, 2024)

[6] Grand View Research, Probiotics Market Size To Reach $220.14 Billion By 2030, August 2023. Available at https://www.grandviewresearch.com/press-release/global-probiotics-market

[7] How much do consumers know about probiotics in food?, February 28, 2022, Food Navigator Europe. Available at https://www.foodnavigator.com/Article/2022/02/28/How-much-do-consumers-know-about-probiotics-in-food#:~:text=When%20asked%20how%20familiar%20respondents,were%20not%20familiar%20at%20all (last visited March 20, 2024)

immune system. The majority also said the "most preferred media for learning more is via product packaging." *Id.*

**B.    Plaintiffs' Analytical Testing Reveal That Products Do Not Contain The 30 Billion CFU Promised On The Product Label**

37.    Plaintiffs conducted analytical tests on multiple samples of multiple lots of Trader Joes' Advances Strength Probiotic, the results of which unequivocally demonstrate that the amount of live bacteria (*i.e.,* CFU) in the Products is materially lower than promised, not only rendering the label claim promise of "30 Billion CFU" false, but undermining the health benefits the probiotics were intended to provide.

38.    Plaintiffs conducted analytical testing on 12 samples of Defendant's Product across 3 production lots, the results of which demonstrate the CFU count to be materially below (*i.e.,* at best 70% less than) the promised 30 billion CFU label claim.[8]

| LOT NUMBER | CFU |
|---|---|
| 102304 | 118,000,000 |
| 48456-E4 | 8,755,320,000 |
| 48454-D4 | 3,143,448,000 |

39.    Failure to provide the promised 30 billion CFU not only renders Defendant's label claim literally false with respect to one of the most material statements on the label, but also meaningfully undermines the efficacy of the Product and its effectiveness to advance digestive and immune health.

---

[8] Although not required to do so, Plaintiff conducted testing consistent with the FDA's protocol under   21 C.F.R. §101.9(g)(2). The specific lot numbers tested were transmitted to Defendant in the form of a demand pursuant to N.Y. Express Warranty Demand on or about January 6, 2025.

**C.    Legal Requirements for Accurate Dietary Supplement Labeling**

40.    The Federal Food, Drug & Cosmetic Act ("FDCA") broadly regulates the sale of dietary supplements to the consuming public.  21 U.S.C §301.[9] It was promulgated in significant part to prevent consumer deception and was principally implemented through the creation of a uniform system of labeling on which consumers could rely to make informed purchasing decisions.

41.    For every dietary supplement, the FDCA requires that the "list of dietary ingredients [] include the quantity of each such ingredient per serving[.]" 21 U.S.C. § 343(q)(5)(F)(ii). "A food with a label declaration of a vitamin . . . shall be deemed to be misbranded under section 403(a) of the FDCA unless it meets the following requirement . . . [w]hen a vitamin . . . meets the definition of a Class I nutrient, the nutrient content of the composite must be formulated to be at least equal to the value for that nutrient declared on the label." *Id*. §101.9(g)(4)(i).

42.    A dietary supplement is also considered adulterated when "…it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations [("cGMP")]." 21 U.S. Code § 342 (g)(1).  Here, among other things, cGMP requires that: that a dietary supplement consistently meet the established specifications for its identity, purity, strength, and composition, 21 C.F.R. §111.3 and that each batch is tested to verify specifications for identity, purity, strength, composition. 21 C.F.R. §111.75(c).  The adulteration, as seen in multiple samples of multiple lots of Defendant's Product is the result of a systemic failure in violation of the fundamental precepts of CGMP.

43.    Although its axiomatic – that a dietary supplement label must accurately reflect the identity of its ingredients and their respective amounts --  the FDA's Dietary Supplement Labeling Guide makes this abundantly clear.

> Must dietary ingredients that I have added to my products be
> present at 100% of the amount that I declare?

---

[9] In 1994 the FDCA was amended by the Dietary Supplement Health and Education Act of 1994 to bring dietary supplement under the broader purview of the FDCA. Among other things, it established a series of Good Manufacturing Practices to be employed by manufacturers of dietary supplements to ensure the products meet their label claims.

> For dietary ingredients that are specifically added, **your product must contain 100% of the volume or weight that you have declared on the label**, with the exception of a deviation that is attributable to the analytical method. **Products that contain less than this amount of such a dietary ingredient would be misbranded and in violation of the law**. Dietary ingredients that are naturally-occurring must be present at 80% of the declared value.

21 CFR §101.9(g)(3) and (g)(4)(emphasis added).[10]

44.     While these fundamental violations of the FDCA serve to highlight the deceptive and misleading nature of Defendant's labeling, significantly, Plaintiffs do not seek to prosecute or enforce any aspect of the FDCA. California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"). Moreover, Plaintiffs' allegations that Defendant failed to properly label its Products are unfair and deceptive business practices that independently give rise to the causes of action detailed below.

45.     That Trader Joe's label claims the Product contains 30 billion CFU "at the time of manufacture" is of no consequence as it is obligated by law (*i.e.,* prohibiting misbranding 21 U.S.C. § 343 demonstrated above) and logic to maintain the accuracy of the label claim through the shelf life of the Product.

46.     This axiomatic proposition is reconfirmed by the International Probiotics Association which identifies five essential elements for a probiotic label. Among them, (1) Products should declare the total CFU count and (2) "**Products should contain 100% of the quantity of probiotics declared on the label at end of shelf life and not at time of manufacture.**"[11]

---

[10] FDA, Dietary Supplement Labeling Guide Chapter IV. Nutrition Labeling, Available at https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling. Last visited November 30, 2024

[11] International Probiotics Association, *5 Essentials For a Quality Probiotic Label.* Available at https://ipa-biotics.org/wp-content/uploads/5E_Quality-Probiotic-Label_revised_Page_1-scaled.jpg

47.    Additionally, Trader Joe's cannot escape liability by claiming its label is only accurate at the time of manufacture because its Products also include specific expiration dates which serve to book end the time (*i.e.,* from date of manufacture through expiration) for which the strength and composition of its Product contents are guaranteed.

**D.    No Adequate Remedy At Law**

48.    Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

49.    Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

50.    Different Scope of Conduct. The scope of actionable misconduct under the unlawful prong of the UCL is different than the other causes of action asserted herein as it creates a cause of action for violations of other laws (*e.g.,* California's Sherman Law), which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiffs and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes and other statutorily enumerated conduct).

51.    Injunctive Relief to Cease Misconduct and Dispel Misperception. Injunctive relief is necessary to prevent Defendant from continuing to engage or re-engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

52.    Further, injunctive relief, in the form of affirmative disclosures, are necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Product's challenged representations are not

true and provide accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's label concerning the Product's true nature.

53.     An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages).

54.     Procedural Posture—Incomplete Discovery & Pre-Certification. Lastly, this is an initial pleading and discovery has not yet commenced. No class has been certified. No expert discovery has commenced. The completion of fact and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class. Plaintiffs therefore reserve their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## ECONOMIC INJURY

55.     Plaintiffs sought to buy products that were lawfully labeled, marketed and sold.

56.     Plaintiffs saw and relied on Defendant's misleading labeling of its Products.

57.     Plaintiffs believed that the Products they purchased contained the promised 30 billion CFU of probiotics.

58.     Plaintiffs believed that the Products were lawfully marketed and sold.

59.     Plaintiffs received Products that were unlawfully marketed and sold.

60.     In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiffs, at a minimum, paid a price premium.

61.     As a result of their reliance on Defendant's misrepresentations, Plaintiffs received Products that lacked the promised ingredients which they reasonably believed they contained.

62.     Plaintiffs lost money and thereby suffered injury as they would not have purchased these Products and/or paid as much for them absent the misrepresentation.

63.     Defendant knows that the inclusion of probiotics in general along with the specific health related claims regarding the effectiveness of those probiotics are material to consumers' purchasing decisions.

64.     Plaintiffs altered their positions to their detriment and suffered damages in an amount equal to the amounts they paid for the Products they purchased, and/or in additional amounts attributable to the deception.

65.     By engaging in the false and deceptive conduct alleged herein Defendant reaped, and continues to reap financial benefits in the form of sales and profits from its Products.

66.     Plaintiffs, however, may be willing to purchase the Product again in the future should only they be able to rely on Defendant's marketing as truthful and non-deceptive.

## CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

   a.  **California:** All persons in California who purchased Trader Joe's Product in California during the Class Period.

   b.  **New York:** All persons in New York who purchased Trader Joe's Product in New York during the Class Period.

   c.  **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

68.     Plaintiffs bring this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

69.     Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

70.     Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

71. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

72. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

    a. Whether Defendant marketed, packaged, or sold the Product to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

    b. Whether Defendant omitted or misrepresented material facts in connection with the sales of its Products;

    c. Whether Defendant participated in and pursued the common course of conduct complained of herein;

    d. Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

    e. Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*. (the "UCL");

    f. Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq*. (the "FAL");

    g. Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq*. (the "CLRA");

    h. Whether Defendant's actions violate N.Y. GEN. BUS. LAW § 349 et seq;

    i. Whether Defendant's actions violate N.Y. GEN. BUS. LAW § 350 et seq;

    j. Whether Defendant should be enjoined from continuing the above-described practices;

    k. Whether Plaintiffs and members of the Class are entitled to declaratory relief; and

l.    Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

73.    Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs were consumers who purchased Defendant's Products. Plaintiffs are no different in any relevant respect from any other Class member who purchased the Products, and the relief sought is common to the Class.

74.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

75.    A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

76.    In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

77.    The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST CAUSE OF ACTION**
**(Breach of Express Warranty)**

78.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

79.    Plaintiffs' express warranty claims are based on violations of N.Y. CLS UCC § 2-313 and § 2-607 and Cal. Com. Code §2313. Defendant was afforded reasonable notice of this claim in advance of the filing of this complaint.

80.    Defendant made express warranties to Plaintiffs and members of the Class that the Products they purchased contained at least 30 billion CFU of probiotics.

81.    The express warranties made to Plaintiffs and members of the Class appear multiple times on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

82.    Plaintiffs and the Class purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

83.    Defendant breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

84.    Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain the full value of the advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

85.    Plaintiffs and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

**SECOND CAUSE OF ACTION**

**("Unlawful" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§17200, *et seq.*)**
**By Plaintiff Bibey on Behalf of the California Subclass**

86.     Plaintiff Bibey incorporates each and every allegation contained in the paragraphs above as if restated herein.

87.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

88.     A business act or practice is "unlawful" if it violates any established state or federal law.

89.     Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

   a. 21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

   b. 21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

   c. 21 U.S.C. §§331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

   d. 21 U.S.C. §342(g)(1) which deems a dietary supplement adulterated if it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations.

90.     California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), the Sherman Law, which provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or

adopted on or after that date shall be the food regulations of this state." Cal. Health & Safety Code § 110100.

91.     Each of Defendant's violations of federal law and regulations violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. ("Sherman Law"), including, but not limited to, the following sections:

92.     Section 110100 (adopting all FDA regulations as state regulations);

93.     Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.");

94.     Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . .  An advertisement is false if it is false or misleading in any particular.");

95.     Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

96.     Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

97.     Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

98.     Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

99.     Each of the challenged omissions, statements, and actions by Defendant violates the FDCA, and the Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

100.    Defendant's conduct is further "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. (the "FAL"), California's Consumers

Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), and breaches express warranty, as discussed in the claims above and below.

101.    By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

102.    In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

103.    Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

### THIRD CAUSE OF ACTION
**("Unfair" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**
**By Plaintiff Bibey on Behalf of the California Subclass**

104.    Plaintiff Bibey incorporates each and every allegation contained in the paragraphs above as if restated herein.

105.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

106.    A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

107.    Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant had engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

108.    In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

109.    Through its unfair acts and practices, Defendant obtained, and continued to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant had made on its Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**FOURTH CAUSE OF ACTION**
**("Fraudulent" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**
**By Plaintiff Bibey on Behalf of the California Subclass**

110.    Plaintiff Bibey incorporates each and every allegation contained in the paragraphs above as if restated herein.

111.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

112.    A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

113.    Defendant's acts and practices of mislabeling its Products in a manner to suggest they principally contained their characterizing ingredients.

114.    As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of their Products.

115.    In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

116.    Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**FIFTH CAUSE OF ACTION**
**(False Advertising in Violation of**
**California Business & Professions Code §§ 17500, *et seq*.)**
**By Plaintiff Bibey on Behalf of the California Subclass**

117.    Plaintiff Bibey incorporates each and every allegation contained in the paragraphs above as if restated herein.

118.     Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

119.     In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq.*

120.     The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq.*

121.     Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

122.     Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant and (3), interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SIXTH CAUSE OF ACTION

**(Violation of the Consumers Legal Remedies Act,**

**California Civil Code §§ 1750, *et seq*.)**

**By Plaintiff Bibey on Behalf of the California Subclass**

123.   Plaintiff Bibey incorporates each and every allegation contained in the paragraphs above as if restated herein.

124.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

125.   Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

126.   The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

127.   Defendant has violated, and continues to violate, the CLRA in at least the following respects:

        a.   §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

        b.   §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

        c.   § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

128.   Defendant knew, or should have known, that the labeling of their Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

129.   The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for

his decision to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

130.    Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

131.    Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

132.    In advance of filing of this Complaint, Plaintiff served a CLRA demand pursuant to Civil Code §1782, via U.S. Certified Mail Return Receipt notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. Defendant has failed to provide the requested relief within 30 days of receipt of the Demand. Accordingly, Plaintiffs seek damages as provided under Civil Code §1780.

## SEVENTH CAUSE OF ACTION

**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law N.Y. GEN. BUS. LAW § 349 *et seq.*)**

**By Plaintiff Elkind on behalf of the New York Subclass**

133.    Plaintiff Elkind incorporates each and every allegation contained in the paragraphs above as if restated herein. Plaintiff Elkind brings this claim on behalf of the New York Subclass for violation of section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*

134. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 349(a).

135. Trader Joe's' labeling and marketing of its Product, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiff Elkind and the New York Subclass as to the characteristics and value of the Products.

136. Subsection (h) of Section 349 grants private plaintiffs a right of action for violation of New York's Consumer Protection from Deceptive Acts and Practices Law, as follows:

> In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. GEN. BUS. LAW § 349(h).

137. In accordance with subsection (h) of Section 349, Plaintiff Elkind seeks an order enjoining TRADER JOE'S from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining the unlawful deceptive acts and practices, Trader Joe's will continue its deceptive and misleading marketing campaign and, in doing so, irreparably harm each of the New York Subclass members. As a consequence of Trader Joe's' deceptive acts and practices, Plaintiff Elkind and other members of the New York Subclass suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Elkind and other members of the New York Subclass also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 349(h).

## **EIGHTH CAUSE OF ACTION**

**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law,
N.Y. GEN. BUS. LAW § 350 *et seq.*)**

**By Plaintiff Elkind on Behalf of the New York Subclass**

138.    Plaintiff Elkind incorporates each and every allegation contained in the paragraphs above as if restated herein. Plaintiff Elkind brings this claim on behalf of the New York Subclass for violation of section 350 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350.

139.    Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 350.

*140.*    New York General Business Law Section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. GEN. BUS. LAW § 350-a.1. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." *Id.*

141.    Trader Joe's' labeling, marketing, and advertising of its Bar, as alleged herein, is "misleading in a material respect" and, thus, constitutes "false advertising," as it falsely represents the Products as consisting of characteristics and lawfulness that they do not possess.

142.    Plaintiff Elkind seeks an order enjoining Trader Joe's from continuing this false advertising. Absent enjoining this false advertising, Trader Joe's will continue to mislead Plaintiff Elkind and the other members of the New York Subclass as to the characteristics of its Products, and in doing so, irreparably harm each of the New York Subclass members.

143.    As a direct and proximate result of Trader Joe's' violation of New York General Business Law §350, Plaintiff Elkind and the other members of the New York Subclass have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Elkind and other

members of the New York Subclass also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 350-e.

## NINTH CAUSE OF ACTION
### (Restitution Based On Quasi-Contract/Unjust Enrichment)
### By Plaintiffs on Behalf of the Nationwide Class

144.     Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

145.     Defendant's conduct in enticing Plaintiffs and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

146.     Defendant took monies from Plaintiffs and the Class for these Products and have been unjustly enriched at the expense of Plaintiffs and the Class as result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and the Class.

147.     It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and Class members.

148.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.     An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1   B.  Restitution in such amount that Plaintiff and all members of the Class paid to

2 purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from

3 those transactions, for Causes of Action for which they are available.

4   C.  Compensatory damages for Causes of Action for which they are available.

5   D.  Other statutory penalties for Causes of Action for which they are available.

6   E.  Punitive Damages for Causes of Action for which they are available.

7   F.  A declaration and Order enjoining Defendant from marketing and labeling its Product

8 deceptively, in violation of laws and regulations as specified in this Complaint.

9   G.  An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees

10 and pre and post judgment interest.

11   H.  An Order requiring an accounting for, and imposition of, a constructive trust upon all

12 monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct

13 alleged herein.

14   I.  Such other and further relief as may be deemed necessary or appropriate.

1

## **DEMAND FOR JURY TRIAL**

2
       Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

3

4
DATED: October 3, 2025               Respectfully submitted,

5

6

7
                    Michael D. Braun

8
                    **KUZYK LAW, LLP**
                    2121 Avenue of the Stars, Ste. 800

9
                    Los Angeles, California 90067
                    Telephone:    (213) 401-4100

10
                    Facsimile:    (213) 401-0311
                    Email:    mdb@kuzykclassactions.com

11

12
                    *Counsel for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF