DAWN SESTITO (S.B. #214011)
dsestito@omm.com
NATALIE CAMASTRA (S.B. #324719)
ncamastra@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California  90071-2899
Telephone:  +1 213 430 6000
Facsimile:   +1 213 430 6407

MARTHA HUTTON (S.B.# 279335)
mhutton@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street NW #10
Washington, DC 20006
Telephone:  +1 202 383 5300
Facsimile:  +1 202 383 5414

*Attorneys for Defendant*
*Trader Joe's Company*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN BIBEY, ET AL.,<br><br>                    Plaintiffs<br><br>        v.<br><br>TRADER JOE'S COMPANY,<br><br>                    Defendant. | Case No. 3:25-cv-08473-TLT<br><br>**DEFENDANT TRADER JOE'S COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[[Proposed Order], Corporate Disclosure Statement, and Certificate of Conflicts and Interested Entities or Persons concurrently filed herewith]<br><br>Judge:  Hon. Trina L. Thompson<br>Courtroom: 9<br>Date: March 24, 2026<br>Time: 2:00 PM |

# NOTICE OF MOTION AND MOTION

**TO THE COURT, THE CLERK, AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on March 24, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, 19th Floor (Courtroom 9), San Francisco, California 94115, before the Honorable Trina L. Thompson, Defendant Trader Joe's Company will and hereby does move this Court to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief may be granted under the Federal Rules of Civil Procedure, Rules 12(b)(6) and 9(b).

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support of the Motion, the pleadings and papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

November 14, 2025

O'MELVENY & MYERS LLP

By:  */s/ Dawn Sestito*
Dawn Sestito
Martha Hutton
Natalie Camastra

*Attorneys for Defendant*
*Trader Joe's Company*

MEM. ISO MOT. TO DISMISS
3:25-CV-08473-TLT

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION & SUMMARY OF ARGUMENT .................................... 1

II.   SUMMARY OF ALLEGATIONS ..................................................... 3

III.  STATEMENT OF ISSUES TO BE DECIDED ........................................ 5

IV.   LEGAL STANDARD ................................................................. 5

V.    ARGUMENT ......................................................................... 7

    A.    The Complaint Fails to Allege That Plaintiffs Acted Reasonably,
        a Threshold Requirement for Their Consumer-Protection Claims ....... 7

    B.    Plaintiffs' Warranty and Unjust Enrichment Claims Fail
        Because the Product Does Not Make Any Express
        Representation That is Untrue .............................................. 14

    C.    Plaintiffs' Fraud-Based Claims Should Be Dismissed for Failure
        to Meet Rule 9(b)'s Heightened Pleading Standard ...................... 15

    D.    Amendment is Futile ........................................................ 17

VI.   CONCLUSION ...................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004) .................................................................................. 6

*Anthony v. Pharmavite,*
    2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ..................................................... 6, 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................... 5, 6

*Barton v. Kimberly-Clark Corp.,*
    2025 WL 486316 (S.D. Cal. Feb. 13, 2025) .................................................... 16

*Barton v. Procter & Gamble Co.,*
    766 F. Supp. 3d 1045 (S.D. Cal. 2025) .......................................................... 16

*Becerra v. Dr Pepper/Seven Up, Inc.,*
    945 F.3d 1225 (9th Cir. 2019) ........................................................................ 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................... 5

*Bobo v. Optimum Nutrition, Inc.,*
    2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ............................................... 13

*Bonin v. Calderon,*
    59 F.3d 815 (9th Cir. 1995) ............................................................................ 17

*Bowler v. Nestle Health Sci. U.S., LLC,*
    763 F. Supp. 3d 996 (C.D. Cal. 2025) ........................................................ 6, 11

*Bowring v. Sapporo U.S.A., Inc.,*
    234 F. Supp. 3d 386 (E.D.N.Y. 2017) .............................................................. 7

*Brazil v. Dole Food Co.,*
    935 F. Supp. 2d 947 (N.D. Cal. 2013) ........................................................ 6, 15

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.,*
    637 F.3d 1047 (9th Cir. 2011) ........................................................................ 6

*Chase v. Hobby Lobby Stores, Inc.,*
    2017 WL 4358146 (S.D. Cal. Oct. 2, 2017) .................................................... 17

*Dinan v. Sandisk LLC,*
    2019 WL 2327923 (N.D. Cal. May 31, 2019) ................................................... 5

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Dorris v. Danone Waters of Am.*,
    2024 WL 4792048 (S.D.N.Y. Nov. 14, 2024) ....................................................... 8

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ...................................................................................... 7

*Gitson v. Trader Joe's Co.*,
    2015 WL 9121232 (N.D. Cal. Dec. 1, 2015) ........................................................ 8

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
    2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ...................................................... 14

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
    2018 WL 11354864 (C.D. Cal. Jan. 24, 2018) ..................................................... 8

*In re Bang Energy Drink Mktg. Litig.*,
    2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ...................................................... 16

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................. 6, 15

*Kim v. Bluetriton Brands, Inc.*,
    2024 WL 243343 (9th Cir. Jan. 23, 2024) ......................................................... 14

*Koch v. Greenberg*,
    14 F. Supp. 3d 247 (S.D.N.Y. 2014) ....................................................................... 6

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) .................................................................................. 6

*La Barbera v. Ole Mexican Foods Inc.*,
    2023 WL 4162348 (C.D. Cal. May 18, 2023), *appeal dismissed sub*
    *nom. LaBarbera v. Ole Mexican Foods, Inc.*, 2023 WL 11823366
    (9th Cir. Sept. 27, 2023) ................................................................................. 11, 12

*Lee v. Nature's Path Food, Inc.*,
    2023 WL 7434963 (S.D. Cal. Nov. 9, 2023) ...................................................... 14

*Lewis v. Davis*,
    2018 WL 4024811 (E.D. Cal. Aug. 20, 2018), *aff'd sub nom. Lewis*
    *v. Andes*, 95 F.4th 1166 (9th Cir. 2024) ............................................................ 9

*Mier v. CVS Pharmacy, Inc.*,
    2025 WL 1905109 (9th Cir. July 10, 2025) ........................................... 11, 12, 18

*Montgomery v. Stanley Black & Decker, Inc.*,
    2024 WL 939151 (2d Cir. Mar. 5, 2024) ............................................................ 11

MEM. ISO MOT. TO DISMISS
3:25-CV-08473-TLT

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Moore v. EO Prods., LLC*,
    2023 WL 6391480 (N.D. Cal. Sept. 29, 2023)......................................................14

5

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) .........................................................................9, 11, 12

6

7

*Puri v. Khalsa*,
    674 F. App'x 679 (9th Cir. 2017) ...........................................................................15

8

9

*Robles v. GOJO Indus., Inc.*,
    2023 WL 4946601 (9th Cir. Aug. 3, 2023)......................................................8, 11

10

*Sinatro v. Mrs. Gooch's Nat. Food Markets, Inc.*,
    2023 WL 2324291 (N.D. Cal. Feb. 16, 2023).................................................7, 13

11

12

*Warren v. I-Health, Inc.*,
    2024 WL 4368234 (E.D. Cal. Oct. 1, 2024) ..........................................................12

13

14

*Weiss v. Trader Joe's*,
    838 F. App'x 302 (9th Cir. 2021)........................................................................8, 14

15

*Whiteside v. Kimberly Clark Corp.*,
    108 F.4th 771 (9th Cir. 2024) ..........................................................................11, 13

16

**Rules**

17

Fed. R. Civ. P. 12(b)(6) ...................................................................................................5

18

Fed. R. Civ. P. 9(b) ........................................................................................................15

19

20

21

22

23

24

25

26

27

28

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION & SUMMARY OF ARGUMENT**

3    Plaintiffs concede that "probiotics are *live* microorganisms." Complaint for

4    Damages, Equitable, Declaratory, and Injunctive Relief (the "Complaint" or

5    "Compl.") ¶ 2 (emphasis added). It follows that, like all living things, these

6    microorganisms die over time. Trader Joe's Advanced Strength Probiotic (the

7    "Product") is no exception to this fact of life. That's why the Product's label

8    contains a prominent disclaimer, alerting consumers that the number of live

9    probiotics per capsule—"30 Billion CFUs**"[1]—is guaranteed *only* at the time of

10   manufacture. *See Id.* ¶¶ 3-4, 5-7. This tells consumers that the number of live

11   probiotics may diminish after the Product leaves the assembly line and during the

12   shelf life of the Product.

13   Plaintiffs overlook these basic facts, and that dooms their claims. Plaintiffs

14   read the label as promising 30 billion CFUs per capsule until the Product's printed

15   expiration date. *Id.* ¶¶ 14, 23, 45, 47. Their independent testing purportedly shows

16   that promise is not true. *Id.* ¶ 37-39. On this basis, Plaintiffs Bryan Bibey and

17   Anne Lynn Elkind assert violations of California's and New York's consumer

18   protection statutes and claims for breach of express warranty and unjust enrichment

19   on behalf themselves and various purported classes.

20   But the Product's label does not make the promise Plaintiffs claim it does—

21   and no reasonable consumer would believe that it did, which is required for

22   Plaintiffs' claims under California's and New York's consumer protection statues

23   to survive. Reasonable consumers do not believe the impossible and so would not

24   understand the Product's label to guarantee that ***zero*** out of 30 billion living

25   microorganisms will die before the Products' expiration date. The label also dispels

26   that very notion. Each of the label's representations about the number of probiotics

27

---

28   [1] A CFU, or colony forming unit, is a measurement of living probiotics. *See*
     Compl. ¶ 32 at n.3.

is accompanied by two prominent asterisks that point consumers to the following clarification on the side panel: "**Each capsule contains a minimum of 30 billion live cultures *at the time of manufacture*." *Id.* ¶¶ 5-7 (emphasis added) (hereinafter, the "Additional Information"). This makes clear that the number of live microorganisms is guaranteed only at the time of manufacture—not at the time of purchase, let alone the time of consumption. And the only reason to make that distinction is that the number of live microorganisms may diminish over time. If Trader Joe's guaranteed that the number of living probiotics would stay the same (or even increase), there would be no need to include a qualification at all.

Taken together, these two facts point to just one conclusion: that the CFU count naturally decreases over the course of the Product's shelf life. Any contrary reading would render the clear caveat presented by the Additional Information meaningless, and permit Plaintiffs to unreasonably read "30 Billion CFUs**" in isolation. This defect therefore dooms Plaintiffs' consumer-protection claims.

The same issue warrants dismissal of Plaintiffs' claims for express warranty and unjust enrichment. Those claims depend on an actionable misrepresentation, but Plaintiffs plead none here. The Product accurately communicates a CFU count at manufacture and signals, via asterisks and the Additional Information, that the CFU count may diminish thereafter.

Plaintiffs' claims also fail under the heightened pleading standards for fraud. The Complaint does not plead with particularity whether Plaintiffs saw or relied on the Additional Information and likewise does not plead whether or how the Additional Information influenced their purchasing decisions. Nor do Plaintiffs provide basic particulars of their purported independent testing of the Product— they offer no details about when or where they purchased the test samples, when tests were performed relative to the samples' expiration dates, or how the Products were stored or handled before testing. They do not even name the laboratory that performed the tests.

Plaintiffs' interpretation of the Product's label is unreasonable as a matter of law.  The Complaint should be dismissed without leave to amend.

## II.    SUMMARY OF ALLEGATIONS

Plaintiffs Bryan Bibey and Anne Lynn Elkind filed their Complaint on October 3, 2025.  Dkt. 1.  They allege that Defendant Trader Joe's Company ("Trader Joe's") marketed and sold the Product in a false and misleading manner by representing that the Product contains 30 billion CFUs.  Compl. ¶ 7.  They allege, based on purported testing by an unnamed lab, that the Product actually contains "on average 8.75 billion or less than 70% of its promised probiotic" CFUs.  *Id.*

Plaintiffs plead that four of the Product's representations contributed to their alleged injuries: (1) the statement "30 Billion CFUs** Per Capsule" that is "bolded and offset in blue color for emphasis" on the Product's front label; (2) the statement "30 Billion CFUs**" that appears on the Product's Supplement Facts side panel; (3) the statement "Trader Joe's Advanced Strength Probiotic Supplement…contains 30 billion Colony Forming Units (CFUs) per capsule.**" that appears on the Product's side panel; and (4) the statement "This is three times more CFUs compared to Trader Joe's Super Acidophilus Complex" that appears on the Product's side panel.  *Id.* ¶¶ 3-7.  Plaintiffs claim to have "read and believe[d] the representations on the Product's labels, specifically that [they were] purchasing a Product that contained 30 billion viable CFU of the promised probiotic strains."  *Id.* ¶¶ 14, 23.  They do not allege the Product contained zero CFUs before it expired.

Plaintiffs do not acknowledge that each of the label's references to "30 Billion CFUs" is immediately followed by two prominent asterisks that correspond to the Additional Information printed on the side panel.  *Id.* ¶¶ 5-7.  The Additional Information states: "**Each capsule contains a minimum of 30 billion live cultures *at the time of manufacture*."  *Id.* (emphasis added).  The Complaint highlights the Additional Information and imposes a large red arrow pointing toward it, *id.*, but Plaintiffs do not allege that they read the Additional Information or, if they did,

how it influenced their interpretation of the phrase "30 Billion CFUs." Plaintiffs offer only the vague and conclusory allegations that Trader Joe's is "obligated by law…and logic to maintain the accuracy of the label claim through the shelf life of the Product," *id.* ¶ 45, and that the expiration date listed on the Product's label guarantees the Product's "strength and composition" until expiration. *Id.* ¶ 47.

Plaintiffs allege that an independent lab tested 12 samples of the Product across three production lots. *Id.* ¶¶ 37-39. These tests allegedly showed that the Product contained less than 30 billion CFUs, which "renders Defendant's label claim literally false." *Id.* However, Plaintiffs do not allege when they procured or tested those samples, how close the samples were to their expiration dates when tested, whether they tested the samples after their expiration dates, which laboratory conducted the tests, the conditions in which the samples were stored before testing (*i.e.*, temperature), or the chain of custody for the samples (*i.e.*, who held the samples before they were submitted for testing). *See id.* ¶¶ 5-7 (side panel directing consumers to store the Product "at 72°F (22°C) or below" for "best" results).

On these allegations, Plaintiff Bibey asserts claims on behalf of himself and a California subclass for violations of California's Unfair Competition Law ("UCL") Bus. & Prof. Code § 17200, *et seq.*, False Advertising Law ("FAL") Bus. & Prof. Code § 17500, and Consumers Legal Remedies Act ("CLRA") California Civil Code § 1750, *et seq.*, as well as breach of express warranty under California Commercial Code § 2313. *See generally* Compl. ¶¶ 78-132 (defining Causes of Action One through Six). Plaintiff Elkind asserts claims on behalf of herself and a New York subclass for violations of New York's General Business Law ("NY GBL") § 349 *et seq.* and NY GBL § 350 *et seq.*, as well as breach of express warranty under New York's Uniform Commercial Code §§ 2-313 and 2-607. *See generally* Compl. ¶¶ 78-85, 133-143 (defining Causes of Action One, Seven, and Eight). Plaintiffs also bring a claim for unjust enrichment on behalf of themselves and a nationwide class. *See* Compl. ¶¶ 144-148 (defining Cause of Action Nine).

Plaintiffs allege they "do not seek to prosecute or enforce any aspect" of the Food, Drug & Cosmetics Act ("FDCA"), *id.* ¶ 44, though Plaintiff Bibey bases his "unlawful" UCL claim on violations of 21 U.S.C. §§301, *et seq.* and California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 *et seq.* Plaintiffs allege they are entitled to injunctive relief, restitution and/or disgorgement of profits, compensatory damages, statutory damages, punitive damages, declaratory relief, a constructive trust over all profits associated with the Product, and attorney's fees. *Id.* at Prayer For Relief A-I.

## III. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiff Bibey's claims under California's consumer protection statutes (CLRA, FAL, UCL) should be dismissed with prejudice under FRCP 12(b)(6).

2. Whether Plaintiff Elkind's claims under New York's consumer protection statutes (NY GBL §§ 349 *et seq.*, 350 *et seq.*) should be dismissed with prejudice under FRCP 12(b)(6).

3. Whether Plaintiffs' claims for breach of express warranty and unjust enrichment should be dismissed with prejudice under FRCP 12(b)(6).

4. Whether Plaintiffs' CLRA, FAL, UCL, and unjust enrichment claims should be dismissed with prejudice under FRCP 9(b).

## IV. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6); *accord Dinan v. Sandisk LLC*, 2019 WL 2327923, at *3 (N.D. Cal. May 31, 2019). A claim is "plausible on its face" only when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). While a court must accept factual allegations as true

MEM. ISO MOT. TO DISMISS
3:25-CV-08473-TLT

at this stage, a pleading that, like the Complaint, "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (internal quotation marks and citations omitted); *see also Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."); *Bowler v. Nestle Health Sci. U.S., LLC*, 763 F. Supp. 3d 996, 1001 (C.D. Cal. 2025) ("[A] court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'") (citation omitted).

   Claims that hinge on fraud, like those asserted here, must also be pleaded with particularity under Rule 9(b). *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–27 (9th Cir. 2009) (applying Rule 9(b) to UCL and CLRA claims) (citation omitted); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 963–64 (N.D. Cal. 2013) (applying Rule 9(b) to CLRA, FAL, and UCL claims). Rule 9(b) requires a plaintiff to describe with particularity the allegedly fraudulent statement, identify who made it, note where and when it was made, show that it was false when made, and describe how it was false. *Kearns*, 567 F.3d at 1124; *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011); *Anthony v. Pharmavite*, 2019 WL 109446, at *2 (N.D. Cal. Jan. 4, 2019). All "averments which do not meet that standard should be 'disregarded' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124 (citation omitted).

   A plaintiff asserting claims under California's consumer protection statutes bears the burden of proving that the challenged representations are false or misleading. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095–96 (9th Cir. 2017). And under NY GBL sections 349 and 350, a plaintiff bears the burden of proving that the challenged representations are "deceptive or misleading in a material way." *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) (citations omitted).

## V.    ARGUMENT

### A.    The Complaint Fails to Allege That Plaintiffs Acted Reasonably, a Threshold Requirement for Their Consumer-Protection Claims.

A single threshold defect dooms all of Plaintiffs' consumer-protection claims under California and New York law: Plaintiffs do not plausibly allege that a reasonable consumer would be misled by the Product's label.  Their theory hinges on reading "30 Billion CFUs**" in isolation, as guaranteeing a fixed CFU count until the Product's expiration.  Yet that interpretation contradicts both common experience and clear information on the Product's label.

To show that a reasonable consumer is likely to be deceived, a plaintiff must allege "more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).  Instead, a plaintiff must allege that "a significant portion of the general consuming public . . . , acting reasonably in the circumstances, could be misled."  *Id.* (internal quotation marks and citations omitted).  If the Court concludes a reasonable consumer would not be deceived, dismissal is appropriate.  *See Sinatro v. Mrs. Gooch's Nat. Food Markets, Inc.*, 2023 WL 2324291, at *11 (N.D. Cal. Feb. 16, 2023) (dismissing UCL, FAL, and CLRA claims where "reasonable consumer would not be deceived by the products at issue"); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (dismissing NY GBL  §§ 349 and 350 claims because defendant's conduct would not mislead a reasonable consumer).

Reasonable consumers would not reach the same mistaken conclusion Plaintiffs claim they did, for two reasons.  ***First***, reasonable consumers do not expect the impossible—specifically, that Trader Joe's guarantees that not one of the billions of living microorganisms in the Product would die before the expiration date.  That overly credulous interpretation ignores reality and is not reasonable. ***Second***, reasonable consumers would heed the bold asterisks that qualify every one

of the label's references to 30 billion CFUs.  Those asterisks point consumers to a statement clarifying that 30 billion CFUs is guaranteed only *at the time of manufacture* and thus may decrease over time.  Indeed, that is the only reason to include such a qualifier: If Trader Joe's could somehow guarantee that all 30 billion CFUs would live until the expiration date, the qualifier would be meaningless.  For these reasons, Plaintiffs' interpretation is unreasonable as a matter of law, and the Complaint should be dismissed without leave to amend.

### i.   Plaintiffs' Interpretation Of The Product's Front Label Is Unreasonable As A Matter Of Law.

Plaintiffs' allegations hinge on the notion that reasonable consumers interpret the Products' front label and side panels as promising 30 billion CFUs beyond the time of manufacture.  But that interpretation is unreasonable as a matter of law: Reasonable consumers know that all living organisms, like probiotics, die over time.  This is exactly the kind of "general knowledge and common sense" that "inform the reasonable consumer considering a product." *Robles v. GOJO Indus., Inc.*, 2023 WL 4946601, at *2 (9th Cir. Aug. 3, 2023) (finding "a reasonable consumer would not expect [a low cost hand sanitizer] to kill germs unknown to science or germs that are not found on the hands").  Indeed, the law presumes that the reasonable consumer is familiar with facts of life and does not "check her common sense at the door of the store." *Weiss v. Trader Joe's*, 838 F. App'x 302, 303 (9th Cir. 2021).  In other words, the reasonable consumer does not believe the impossible. *Gitson v. Trader Joe's Co.*, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015) (finding that even the least sophisticated consumer does not think soymilk comes from a cow); *accord In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2018 WL 11354864, at *5 (C.D. Cal. Jan. 24, 2018) ("[N]o consumer could reasonably believe that a product that contains only four calories could provide five hours of caloric energy."); *Dorris v. Danone Waters of Am.*, 2024 WL 4792048, at *6 (S.D.N.Y. Nov. 14, 2024) (finding consumers "could not have reasonably believed

that" product's transportation from France to California "would have produced zero carbon emissions").

For example, in *Moore*, the plaintiffs alleged "100% New Zealand Manuka Honey" was misleading because their testing indicated that the honey was produced by bees that did not feed exclusively on Manuka flowers. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 877 (9th Cir. 2021). But the Ninth Circuit found the reasonable consumer "would generally know that it is impossible to exercise complete control over where bees forage down to each specific flower or plant." *Id.* at 883. Thus, dismissal on the pleadings was "well justified" because plaintiffs based their claims on "unreasonable or fanciful interpretations" of the products' label. *Id.* at 882-83.

Here, Plaintiffs readily admit that probiotics are "live microorganisms," Compl. ¶ 2, yet they claim to have reached the fanciful interpretation that not one of the Products' billions of living organisms would die before the Product's expiration date. No reasonable consumer would reach that conclusion because they know that all living organisms die over time. *See Moore*, 4 F.4th at 882-83 ("A reasonable consumer would not understand Trader Joe's label here as promising something that is impossible to find."); *Lewis v. Davis*, 2018 WL 4024811, at *21 (E.D. Cal. Aug. 20, 2018), *aff'd sub nom. Lewis v. Andes*, 95 F.4th 1166 (9th Cir. 2024) ("Everlasting life obviously does not exist in the physical world."). Thus, no reasonable consumer would read the Products' label and conclude that the Product contains 30 billion CFUs through the duration of the Products' shelf life.

### ii. Plaintiffs' Claims Also Fail Because They Disregarded Prominent Information on the Product's Label.

Plaintiffs' claims also fail because their interpretation ignores the asterisks and Additional Information that qualify each and every one of the Product's references to "30 billion CFUs." The Additional Information states: "**Each capsule contains a minimum of 30 billion live cultures *at the time of manufacture*." Compl. ¶¶ 3, 5-7 (emphasis added). That clarification renders Plaintiffs'

1  interpretation of the label unreasonable as a matter of law.



*See id.* (Product images, retaining Plaintiffs' markup).

The "reasonable consumer" is not the "least sophisticated" or "unwary" consumer. *La Barbera v. Ole Mexican Foods Inc.*, 2023 WL 4162348, at *10-11 (C.D. Cal. May 18, 2023), *appeal dismissed sub nom. LaBarbera v. Ole Mexican Foods, Inc.*, 2023 WL 11823366 (9th Cir. Sept. 27, 2023).  Rather, the reasonable consumer is "intelligent, someone capable of analyzing different pieces of information, engaging in logical reasoning, and drawing 'contextual inferences' from a product and its packaging." *Id.* (quoting *Moore*, 4 F.4th at 883).  The "presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats," or additional information. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024); *accord Montgomery v. Stanley Black & Decker, Inc.*, 2024 WL 939151, at *1 (2d Cir. Mar. 5, 2024) (affirming dismissal, noting the "asterisk symbol…would alert a reasonable consumer to the fact that certain caveats may apply.").  And when those qualifications—like the Additional Information here—dispel any idiosyncratic implications a plaintiff might understand the front label to convey, dismissal is warranted. *See Mier v. CVS Pharmacy, Inc.*, 2025 WL 1905109, at *1 (9th Cir. July 10, 2025) (affirming dismissal where the front label claim plaintiff "challenges as confusing or misleading" is "succeeded by an asterisk," and the "corresponding asterisk, qualifie[d] the front label"); *accord Robles*, 2023 WL 4946601, at *1 (holding plaintiff "fail[ed] to state a claim because she did not plausibly allege…that the front label [with the asterisk], as clarified by the back label, is false or misleading"); *Bowler*, 763 F. Supp. 3d at 1004 (granting motion to dismiss where back label representations linked by an asterisk "dispel any false or misleading implications a reasonable consumer might understand the front-label statements to convey").

The court in *Mier* dismissed a labeling claim for exactly this reason, finding that an asterisk and corresponding qualification rendered the plaintiff's interpretation of the label unreasonable.  There, a hand sanitizer's front label claimed the product "kills 99.99% of Germs*[.]"  *Mier*, 2025 WL 1905109, at *1.

The plaintiff claimed that a reasonable consumer would conclude the sanitizer kills "virtually every single disease-causing germ commonly found on hands[.]" *Id.* But the Ninth Circuit rejected that argument, noting the back label contained a statement corresponding to the front label's asterisk: "*Effective at eliminating more than 99.99% of many common harmful germs and bacteria in as little as 15 seconds[.]" *Id.* Because the qualifying statement clarified the front label statement, the Ninth Circuit affirmed dismissal. *See also Warren v. I-Health, Inc.*, 2024 WL 4368234, at *5 (E.D. Cal. Oct. 1, 2024) (holding probiotic's front label promise to "Rebuild[] Bacterial Balance Lost to Antibiotic Use*" was not misleading because corresponding back label statement clarified that the product was not a drug that treats diseases).

Here, every reference to "30 billion CFUs**" is qualified by two asterisks and the corresponding Additional Information, which states: "**Each capsule contains a minimum of 30 billion live cultures *at the time of manufacture*." Compl. ¶¶ 3-7. That qualification addresses the very misconception underlying Plaintiffs' claims. By stating the CFU count applies at a specific time—"the time of manufacture"—the Additional Information notifies consumers that the CFUs may change by the time of purchase or consumption. And the only inference a reasonable consumer—equipped with the knowledge that probiotics necessarily diminish over time[2]—could draw from this qualification is that the CFU count may decrease after the Product leaves the production line. *Moore*, 4 F.4th at 882 ("[D]eceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used."); *accord La Barbera*, 2023 WL 4162348, at *10 (The reasonable consumer

---

[2] Even if the Court determines reasonable consumers do not possess the knowledge that probiotics are living organisms, the Additional Information nonetheless informs consumers they are purchasing "live cultures" and Plaintiffs readily admit that probiotics are "living microorganisms[.]" Compl. ¶¶ 2, 5-7.

1  "does not just view one phrase…in isolation, but looks at the entirety of the
2  packaging together…and the 'context in which that information is provided and
3  used.'").

4       Any contrary reading would render the Additional Information meaningless.
5  If Trader Joe's guaranteed that the Product's CFU count would stay the same or
6  even increase over the Product's shelf life, there would be no need for a qualifier at
7  all.  It would be meaningless to specify the CFUs *at manufacture* if the CFUs was
8  the same *at all times*.  A reasonable consumer would not ignore the implications of
9  the Additional Information and stick with a contradictory interpretation of the
10  Product.  *See Sinatro*, 2023 WL 2324291, at *10 ("A 'rational consumer' would not
11  'simply assume' something about a product that they can 'plainly see.'").

12       While a reasonable consumer would take the Additional Information into
13  account, that is exactly what Plaintiffs fail to do.  The Complaint says nothing about
14  how Plaintiffs read or interpreted the two asterisks on the front label and the
15  corresponding Additional Information on the side panel.  While Plaintiffs note that
16  Product's front label statement "30 Billion CFU [sic] Per Capsule" is "bolded and
17  offset in blue color for emphasis[,]" Compl. ¶ 3, they disregard the two bolded
18  asterisks, equally offset in blue color for emphasis, that immediately follow the
19  quantity of CFUs.  *Id.*  Ignoring clear and legible statements on the label that dispel
20  the very misconception Plaintiffs claim to have reached is unreasonable as a matter
21  of law.  *See Whiteside*, 108 F.4th at 785 ("Plaintiff cannot simply look to the
22  statement on the front panel, ignore the asterisk, and claim he has been misled.");
23  *Bobo v. Optimum Nutrition, Inc.*, 2015 WL 13102417, at *5 (S.D. Cal. Sept. 11,
24  2015) ("[A] reasonable consumer…cannot look at only one statement to the
25  exclusion of everything else and claim he has been misled.").  Had Plaintiffs read
26  the Additional Information, they would have formed a reasonable interpretation and
27  would not claim to have been misled.

28       Because Plaintiffs fail to plead that a reasonable consumer would be misled

by the Product, the Complaint should be dismissed.

### B. Plaintiffs' Warranty and Unjust Enrichment Claims Fail Because the Product Does Not Make Any Express Representation That is Untrue.

Plaintiffs' claims for breach of express warranty and unjust enrichment fail for the same reason as their consumer-protection claims: They rely on Plaintiffs' implausible and unreasonable interpretation of the statement "30 Billion CFUs**." Compl. ¶¶ 80-81.  Again, the two prominent asterisks in that statement direct consumers to the Additional Information, which clarifies that 30 billion CFUs are only guaranteed at the time of manufacture and implies that the CFU count may decrease over time. *See supra*, Section IV.A.  Given that qualification, there is no actionable deception to support Plaintiffs' express-warranty and unjust-enrichment claim. *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020) (dismissing breach of express warranty and unjust enrichment claims premised on deception that, as a matter of law, did not exist). These claims necessarily fail for the same reasons Plaintiffs' consumer protection claims fail.  *See Weiss*, 838 F. App'x at 303 (affirming dismissal of breach of warranty claims premised on the same representations as consumer protection claims); *Kim v. Bluetriton Brands, Inc.*, 2024 WL 243343, at *2 (9th Cir. Jan. 23, 2024) ("Because all of Plaintiff's theories fail, she cannot show actionable deception or wrongdoing required for an unjust enrichment claim."); *Lee v. Nature's Path Food, Inc.*, 2023 WL 7434963, at *4 (S.D. Cal. Nov. 9, 2023) (dismissing breach of express warranty claim for the same reasons UCL, CLRA, and FAL claims failed).

Plaintiffs' unjust enrichment claim must be dismissed for the additional reason that Plaintiffs do not specify which state law it is being brought under.  *See generally*, Compl. ¶¶ 144-148; *Moore v. EO Prods., LLC*, 2023 WL 6391480, at *9 (N.D. Cal. Sept. 29, 2023) (dismissing unjust enrichment claim because "it does not specify which state law it is being brought under").

**C.    Plaintiffs' Fraud-Based Claims Should Be Dismissed for Failure to Meet Rule 9(b)'s Heightened Pleading Standard.**

Plaintiffs' UCL, FAL, CLRA, and unjust enrichment claims should also be dismissed because Plaintiffs failed to allege them with particularity as required under Rule 9(b).  Fed. R. Civ. P. 9(b).  All of these claims allege as their basis a "unified course of fraudulent conduct," specifically that Trader Joe's fraudulently misrepresented that the Product contains 30 billion CFUs until expiration.  *See Kearns*, 567 F.3d at 1127 (holding "the pleading…as a whole must satisfy the particularity requirement of Rule 9(b)" where claims are said to be "grounded in fraud" or "to sound in fraud"); *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) ("Because the unjust enrichment claim is based on fraud, it too is subject to Rule 9(b)."); *Brazil*, 935 F. Supp. 2d at 964 (dismissing CLRA, FAL, and UCL claims for failure to meet heightened pleading standard under Rule 9(b)).

Plaintiffs' Complaint fails under Rule 9(b) because it does not describe Plaintiffs' independent testing of the Product with sufficient particularity.  Plaintiffs claim to have conducted "analytical testing on 12 samples of Defendant's Product across 3 production lots" Compl. ¶ 38, but that is the beginning and end of the detail they provide.  The Complaint does not describe when the testing occurred or indicate whether the Products were tested before or after their respective expiration dates.  This is material because, as written, the Complaint leaves open the possibility that Plaintiffs tested expired products.  *See generally id.* ¶¶ 7, 37-39. Plaintiffs likewise fail to allege when they procured samples of the Product that was tested—the Complaint only states that Plaintiff Bibey purchased the Product "5 to 7 times in between October 2023 and December 2024," *id.* ¶ 13, and that Plaintiff Elkind purchased the Product "on a monthly basis from April 2023 to January 2024."  *Id.* ¶ 22.  The Complaint does not otherwise connect these purchases to the samples of the Product that were tested.

Likewise, the Complaint is silent on the chain of custody for the samples, or

any information about how the test samples were stored after purchase. These facts are material because the Product instructs consumers to store it "at 72°F (22°C) or below" for "best" results. *Id.* ¶¶ 5-7. For example, if Plaintiffs mailed the samples for testing, the samples could have been subjected to hot temperatures depending on how the Product was packaged and transported (*i.e.*, sitting in a hot vehicle, or sitting out in direct sunlight). And Plaintiffs do not even allege the name of, or any other information about, the laboratory that performed the tests. These missing details warrant dismissal under Rule 9(b). *See Barton v. Procter & Gamble Co.*, 766 F. Supp. 3d 1045, 1062 (S.D. Cal. 2025) (dismissing claims under Rule 9(b) where complaint "provides no further information as to *the laboratory that performed the testing* or the form and *date* of [the] testing") (emphasis added); *accord Barton v. Kimberly-Clark Corp.*, 2025 WL 486316, at *10 (S.D. Cal. Feb. 13, 2025) (dismissing consumer protection claims under Rule 9(b) where the complaint "fail[s] to provide sufficient detail regarding the testing" such as "information as to *the laboratory that performed the testing* or the form and *date of [the] testing*") (emphasis added); *In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at *5 (N.D. Cal. Feb. 6, 2020) (finding plaintiffs failed to meet Rule 9(b) where the only fact that plaintiffs pleaded in support of their allegations was that "[i]ndependent testing confirm[ed] that the [] Products do not contain the represented ingredients and/or potency in accordance with Defendant's representations").

The Complaint also falls short of Rule 9(b) by offering insufficient detail about how Plaintiffs' read and relied on the Product's label. Plaintiffs vaguely allege that they "read and believed the representations on the Product's labels," and "specifically purchased the Product relying on its label claims." Compl. ¶¶ 14-15, 23-24. Yet Plaintiffs' factual allegations do not support that assertion. The Complaint says nothing about how Plaintiffs read or interpreted the two asterisks on the front label and the corresponding Additional Information on the side panel. Nor

does it say anything about how the Additional Information influenced Plaintiffs' purchasing decision.  The Complaint only jumps to legal conclusions about the Additional Information: (1) that it "is of no consequence" because Trader Joe's "is obligated by law…and logic to maintain the accuracy of the label claim through the shelf life of the Product."  *Id.* ¶ 45; and (2) that "Trader Joe's cannot escape liability by claiming its label is only accurate at the time of manufacture because…specific expiration dates…book end the time…for which the strength and composition of its Product contents are guaranteed.  *Id.* ¶ 47.  Failure to allege how a consumer read and interpreted clear representations warrants dismissal.  *See Anthony*, 2019 WL 109446, at *5 (dismissing false advertising claim because complaint failed to adequately plead, with any particularity, any allegations regarding the asterisk on defendant's food products that directs consumers to the qualifying statement); *accord Chase v. Hobby Lobby Stores, Inc.*, 2017 WL 4358146, at *8-9 (S.D. Cal. Oct. 2, 2017) (dismissing false advertising claims for failure to satisfy Rule 9(b) because plaintiff did not allege whether she saw the asterisk in the challenged advertisement or if she read the corresponding disclaimer).  Accordingly, each of Plaintiffs' fraud-based claims should be dismissed.

Accordingly, Plaintiffs failed to meet their heightened pleading standard under Federal Rule of Civil Procedure 9(b).

### D.    Amendment is Futile.

Plaintiffs' claims fail as a matter of law and cannot be saved through amendment.  All of Plaintiffs' claims stem from an unreasonable interpretation of one part of the Product's label and their refusal to acknowledge the significance of the Additional Information.  Plaintiffs simply cannot square their idiosyncratic expectations about the Product's contents with the Product's clear, unambiguous disclosures.  Plaintiffs therefore will not be able to save their Complaint through amendment, and the Court should dismiss it without leave to amend.  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself,

justify the denial of a motion for leave to amend."); *accord Mier*, 2025 WL 1905109, at *1 (dismissing consumer protection claims without leave to amend where plaintiff "did not plausibly allege that a reasonable consumer would be misled or confused by the labels").

## VI.    CONCLUSION

Trader Joe's respectfully seeks an order dismissing Plaintiffs' Complaint without leave to amend.


November 14, 2025                                O'MELVENY & MYERS LLP

                                                By:   */s/ Dawn Sestito*
                                                Dawn Sestito
                                                Martha Hutton
                                                Natalie Camastra

                                                *Attorneys for Defendant*
                                                *Trader Joe's Company*