UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN BIBEY, et al., | Case No. 25-cv-08473-TLT |
| Plaintiffs, | |
| v. | **GRANTING DEFENDANT'S MOTION TO DISMISS** |
| TRADER JOE'S COMPANY, | Re: Dkt. No. 14 |
| Defendant. | |

Before the Court is the Defendant's motion to dismiss. ECF 14. In this case, Plaintiffs, on behalf of similarly situated consumers in California and New York, assert nine class action claims alleging violations of California's Unfair Competition Law, California's False Advertising Law, California's Consumers Legal Remedies Act, New York's Consumer Protection from Deceptive Acts and Practices Law, breach of express warranty and unjust enrichment. These claims are predicated on the allegation that the Defendant falsely portrayed, to the public, the count of live and active micro-organisms in its probiotic dietary supplement. Defendant moves the Court to dismiss Plaintiffs' claims for failure to state a claim and falling short of the heightened pleading alleging deceptive and false advertising.

After reviewing the parties' briefs, hearings, the relevant legal authority, and for the reasons stated below, the Court concludes that Plaintiffs have failed to plausibly state claims under the UCL, FAL, CLRA, NY GBL, and the express warranty and unjust enrichment claims.

Accordingly, the Court **GRANTS** Defendant's motion to dismiss.

## I. PROCEDURAL HISTORY

On October 3, 2025, Plaintiffs Bryan Bibey and Anne Lynn Elkind filed a complaint against Defendant Trader Joe's Company. ECF 1. On November 14, 2025, Defendant Trader Joe's Company filed the present Motion to Dismiss. ECF 14. The Motion to Dismiss was fully

United States District Court
Northern District of California

briefed on December 19, 2025.  ECF 18, 22.

This Order relates to Trader Joe's Company's Motion to Dismiss. ECF 14.  The parties submitted responses to supplemental questions before the oral argument for the Motion.  ECF 34–35.  The Court heard oral argument on this Motion on March 24, 2026.  ECF 36.

## II.    FACTUAL BACKGROUND

The core of this dispute involves Plaintiffs' legal challenge to Defendant's advertising, labeling, and sale of its Advanced Strength Probiotic Dietary Supplement ("Product" or "Supplement").  The probiotic products contain probiotic doses in the colony forming units ("CFU") to bring certain digestive or immune health benefits when consumed or applied to the body.  ECF 1 ¶ 2.  Plaintiffs Bryan Bibey and Anne Lynn Elkind are residents of California and New York, respectively, who purchased the Product multiple times between 2023 and 2024.  *Id*. ¶¶ 12, 13, 21, 22.  Defendant Trader Joe's Company is an American grocery chain headquartered in California that markets and sells the Supplement under its own brand name.  *Id*. ¶ 30.

Defendant launched an advertising and labeling campaign for the Product, unequivocally representing it as having "Advanced Strength" probiotic with "30 Billion CFU Per Capsule."  *Id*. ¶ 3.  The front of the Product featured in bold, blue text as "30 BILLION CFUs** PER CAPSULE 8 PROBIOTIC STRAINS."  *Id*.  The CFU number "30 Billion CFUs" was reconfirmed on the reverse side and side panel of the Product.  *Id*. ¶¶ 4–5.  The side panel explains two asterisks on the front of the Product as follows:

> "**Each capsule contains a minimum of 30 billion live cultures at the time of manufacture. [] This [Product] is 3 times more CFUs compared to [Defendant's other product]."  *Id*. ¶ 5.

Plaintiffs conducted independent analytical tests on multiple lots of the Product and found that the Product contains an average of 8.75 billion CFUs, or less than 70% of the promised CFU number.  *Id*. ¶¶ 7, 38.  One tested lot revealed a number as low as 118 million CFUs.  *Id*. ¶ 38.

With this inconsistent result, Plaintiffs argue that Defendant's label on the Product claiming about 30 billion CFU "at the time of manufacture" is legally and logically insufficient, as the Product must maintain the accuracy of the label throughout its shelf life.  *Id*. ¶ 45.  Plaintiffs contend that Defendant's misrepresentations are material to consumers' decisions and have caused

consumers, including Plaintiffs, to suffer economic injuries by purchasing the Product at a premium price. *Id*. ¶¶ 55–63. Plaintiffs further contend they would not have purchased the Product or would have purchased the Product on different terms had they known the truth about the Product. *Id*. ¶¶ 18, 27.

## III.    LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a motion to dismiss, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Generally, when assessing the sufficiency of a complaint under Rule 12(b)(6), the Court may not consider materials outside of the pleadings. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Any claims that are "grounded in fraud ... must satisfy the traditional plausibility standards of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks, alterations, and citations omitted).

United States District Court
Northern District of California

## IV.    ANALYSIS

### A.    Plaintiffs have failed to plausibly plead the consumer protection claims.

Defendant moves to dismiss Plaintiffs' consumer protection claims on the basis that the reasonable consumers would not reach the mistaken conclusion about the Product's label that Plaintiffs allege. ECF 14 at 7. Specifically, Defendant argues that Plaintiffs' interpretation is unreasonable because it disregards prominent qualifying information on the label. *Id*. at 7–13.

Plaintiffs present multiple counterarguments. ECF 18 at 4–12. They argue that because the CFU is a significant factor influencing consumers' purchasing decisions, Defendant "affirmatively chose to make a claim about the CFU" to mislead reasonable consumers. ECF 18 at 4. They further contend that since "30 billion CFU" is unambiguous and Defendant's disclaimer is placed on the back of the Product in a small, lowercase font that neither clarifies nor contradicts the front label statement, a reasonable consumer would believe that the Product contains 30 billion CFU throughout its shelf life or expiration period. *Id*. at 5–6. They also argue that the phrase "at the time of manufacture" in the disclaimer does not alter or qualify the reasonable expectation that the Product will have 30 billion CFU at the time consumers and all reasonable buyers read the label, purchase the product, and throughout its expiration period. *Id*. at 4.

### i.    Plaintiffs have failed to pass the reasonable consumer test and Rule 9(b).

To survive a motion to dismiss consumer protection claims under California or New York law, each claim must pass both the "reasonable consumer" test and satisfy the heightened pleading standard of Rule 9(b). *Bodenburg v. Apple Inc.*, 146 F.4th 761, 768–69 (9th Cir. 2025); *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018). Under the reasonable consumer test, plaintiffs must show "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted); *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020). To put it differently, a complaint "must allege that the packaging will deceive many consumers, not just that a few might be deceived." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024).

4

United States District Court
Northern District of California

While dismissals at the pleading stage are "rare," *id.*, plaintiffs "cannot proceed simply by asserting [their] own belief and conclusions about consumers' beliefs without additional facts." *Harris v. McDonald's Corp.*, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021) (citing *Twombly*, 550 U.S. at 570).

The Court finds that Plaintiffs have failed to plausibly allege that a reasonable consumer would fall into Plaintiff's specific interpretation of the Product's label and to meet the heightened pleading standard of Rule 9(b).  Taking Plaintiffs' allegations as true, the Court notes that while the CFU claims are highly material, the Complaint fails to plead with particularity how these specific labels deceive the public or reasonable consumers.

Instead of specific deception, the Complaint primarily pleads the definition of probiotics, the conditions for probiotics to be effective, the growing consumer awareness of dietary preferences coupled with digestive health products, the prospects of the global probiotic market, and a survey of consumer awareness of probiotics.  ECF 1 at 31–36.  The Complaint does not specifically plead how or why a certain CFU number or the allegedly inconsistent CFU number is highly material to deceive a significant portion of the general consuming public or targeted reasonable consumers.

Plaintiff's reliance on *Williams v. Gerber Prods*. Co., 552 F.3d 934 (9th Cir. 2008) and *Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111 (N.D. Cal. 2023) is inapposite.

Unlike the snack packaging designed for toddlers in *Williams*, where each feature including a "fruit juice" name, pictures of fruit for a product containing no such juice other than white grape juice from concentrate and corn syrup and sugar as two prominent ingredients, and statements that it was made with "fruit juice and other all natural ingredients" and is "just one of a variety of nutritious [] foods and juices that have been specifically designed to help toddlers grow up strong and healthy" contributes to deceive reasonable consumers as a whole, 552 F.3d at 939, the Product label here provides a statement of the CFU count at the time of manufacture.  Similarly, *Murphy* is distinguishable because it involved significant overdosing of melatonin and non-compliance with FDA regulations, which are not the primary claims here.

ii.     **Prominent asterisks and the corresponding disclaimer would not deceive**

5

**reasonable consumers.**

Turning to the Product's disclaimer, the Court finds that a reasonable consumer would not be deceived in the manner based on Plaintiffs' allegations. The Ninth Circuit and this District have repeatedly held that statements on a front label followed by asterisks that correspond to disclosures on another panel would put reasonable consumers on notice. *See Whiteside*, 108 F.4th at 785 (finding that even if the label "*70%+ by weight" is ambiguous, *by arguendo*, "the presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats, making it unreasonable to assume [] that a reasonable consumer was likely to be deceived."); *accord Moreno v. Vi-Jon, LLC*, No. 23-55631, 2024 WL 4144068, at *1 (9th Cir. Sept. 11, 2024) (the label "KILLS 99.99% OF GERMS*" accompanied with a disclaimer on the back of the product); *Mier v. CVS Pharmacy, Inc.*, No. 24-482, 2025 WL 1905109, at *1 (9th Cir. July 10, 2025) (the same label); *McWhorter v. Procter & Gamble Co.*, No. 24-CV-00806-AMO, 2025 WL 948061 at *1 (N.D. Cal. Mar. 28, 2025) (the label "96% Naturally Derived** Ingredients"). "Plaintiffs are not free to excise or ignore words on the label to manufacture customer confusion." *Id.* at *7.

Such is the case here. The disclaimer consists of "30 Billion CFUs" followed by *two asterisks*, (i.e. 30 Billion CFUs**) in front of the Product, and the accompanying statement for the two asterisks on the side panel that explains "**Each capsule contains a minimum of 30 billion CFU at the time of manufacture." ECF 1 at 2, 4. Given that two asterisks put a consumer on notice regarding the CFU number, Plaintiffs' subjective interpretation of what consumers *should* believe by looking at "30 Billion CFU" in isolation is insufficient to state a claim for widespread or reasonable consumer deception.

Separately, the Court notes that Plaintiffs have improperly introduced a new argument in their opposition that the Product's failure to comply with the FDA's guidelines becomes the basis of the consumer protection claims and others in this case and also improperly relied on *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021). The Ninth Circuit in *Moore* held that a reasonable consumer would not interpret the term "100% New Zealand Manuka Honey" to mean that the honey is exclusively derived from a single floral source of Manuka, because it is impossible to

6

have complete control over the bees' pollination process. *Id*. at 882.

Just as a reasonable consumer cannot expect 100% Manuka honey to be derived from a single floral source due to the nature of bees in *Moore*, the same reasonable consumers cannot expect a live culture of 30 billion CFU to be maintained at a static number from manufacture to expiration. Because it is physically impossible to maintain a constant CFU count over the Product's shelf life,[1] Defendant's conduct is not inherently counterfactual. *See Ebner*, 838 F.3d at 965. (Representations that "might conceivably be misunderstood by some few consumers viewing [them] in an unreasonable manner" do not suffice to survive dismissal).

Accordingly, Plaintiffs' consumer protection claims have failed to plausibly plead the consumer protection claims under the reasonable consumer standard and Rule 9(b).

**B.    Plaintiffs' independent testing satisfies Rule 9(b).**

Defendant claims that Plaintiffs fail to describe the independent testing of the Product with sufficient particularity because the Complaint does not describe when the testing occurred, whether the testing occurred before or after their respective expiration dates of the Products, how the Products were stored after purchase, or who performed the tests. ECF 14 at 15–16.

Conversely, the Court finds that Plaintiffs' independent testing of the Product alleged in the Complaint satisfies the Rule 9(b). "Nothing about Rule 9(b) suggests that Plaintiff must provide specifics about the means [of the laboratory testing] by which the falsity was revealed." *Phan v. Sargento Foods, Inc.*, No. 20-CV-09251-EMC, 2021 WL 2224260, at *3 (N.D. Cal. June 2, 2021); *see Amin v. Subway Restaurants, Inc.*, No. 21-CV-00498-JST, 2022 WL 20184652, at *5 (N.D. Cal. July 7, 2022) (rejecting argument when a defendant claims the plaintiff's laboratory testing information was not enough to meet Rule 9(b)). The Complaint alleges that Plaintiffs tested 12 samples of Defendant's Product across three production lots, including the specific lot

---

[1] Plaintiffs state that "it is scientifically possible and commercially standard to maintain the claimed amount of probiotic through the expiration date of the product" but contradictorily acknowledge that "[i]t is well accepted that probiotics, along with other living things, will degrade over time. This is why [] manufacturers conduct shelf life studies in order to establish the length of time their product ingredients will meet their claims before degrading." ECF 34 at 5–6. Defendant states that "[t]here is no commercial standard [in terms of maintaining number of live cultures of] probiotics [and the FDA] has declined to set a uniform standard for CFU claims to date [and] probiotics necessarily die during their shelf life." ECF 35 at 2–4. Based on this, the Court infers that it is impossible to maintain CFU counts over the product's shelf life.

numbers (e.g., 102304, 48456-E4, and 48454-D4) and the resulting CFU counts (e.g., 118,000,000, 8,755,320,000, and 3,143,448,000). *Cf. In re Bang Energy Drink Mktg. Litig.*, No. 18-CV-05758-JST, 2020 WL 4458916, at *5 (N.D. Cal. Feb. 6, 2020) (Plaintiffs failed to meet Rule 9(b) when the complaint merely alleges that "independent testing confirms [the misleading amount of the challenged ingredient]," without offering any details about the specifics of the testing or findings). The complaint also notes in a footnote that the testing followed the FDA's protocol and that the results were sent to the Defendant before this suit was filed.

Accordingly, Plaintiffs' independent testing allegation in the Complaint has satisfied Rule 9(b).

**C.    Plaintiffs failed to plausibly state a claim for breach of express warranty.**

Defendant contends that Plaintiffs' express warranty claim fails for the same reasons as the consumer protection claims. ECF 14 at 14. Plaintiffs counter that because their consumer protection claims would survive this motion, their express warranty claims do as well. ECF 18 at 20.

"To prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1031 (N.D. Cal. 2016). A plaintiff must "identify a specific and unequivocal written statement about the product that constitutes an explicit guarantee." *Valentine v. Crocs, Inc.*, 783 F. Supp. 3d 1204, 1211 (N.D. Cal. 2025) (citation omitted).

While Plaintiffs base their claim that Defendant made express warranties of the CFU number in the Product, the Court finds that Plaintiffs fail to identify any "specific and unequivocal" statement that constitutes an explicit guarantee of at least 30 billion CFU of probiotics at the time of purchase, especially in light of "at the time of manufacture" in the disclaimer. While the label in isolation (i.e., 30 Billion CFUs) may amount to a promise of that CFU amount in the Product, as stated above, the reasonable consumer is put on notice by the two asterisks following the label, and for that reason, the Court finds that the Defendant did not make a

8

clear guarantee of the existence of 30 billion CFU at the time of purchase.  *See* s*upra* Section V.A.;  *see McMahon v. Take-Two Interactive Software, Inc.*, 745 F. App'x 786, 787 (9th Cir. 2018) (holding that the statement "Featuring GTA Online" did not specifically and unequivocally promise, or provide an explicit guarantee of, immediate access to GTA Online).  Furthermore, the Court finds that Plaintiffs' admission that they do not know whether "the Product actually contained 30 Billion CFU at time of manufacture" and discovery will reveal it, also undermines their claim of an express warranty.  ECF 18 at 4.

Accordingly, Plaintiffs have failed to plausibly state a breach of express warranty claim.

### D.　Plaintiffs have failed to properly plead the governing law for the unjust enrichment claim.

Defendant argues Plaintiffs fail to specify the applicable law to survive the unjust enrichment claim.  ECF 14 at 14.  Plaintiffs concede "California law was not specifically pled," but assert that California law should logically apply.  ECF 18 at 21.

Given that two different state laws are at issue, the Court cannot simply choose and apply the California law for Plaintiffs' unjust enrichment claim without proper pleading.  *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1122 (N.D. Cal. 2021) (While the significant aggregation of contacts is directed to California, plaintiffs cannot assert a nationwide unjust enrichment claim under California law because "the elements necessary to establish a claim for unjust enrichment vary materially from state to state") (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) (overruled in-part on standing ground)).

Accordingly, Plaintiffs have failed to properly plead an unjust enrichment claim.

## V.　CONCLUSION

For the reasons discussed, the Court **GRANTS** Defendant's motion to dismiss **WITHOUT PREJUDICE** for Plaintiffs' Counts 1-9.

The Court gives Plaintiffs leave to file a first amended complaint as to Count 9, fourteen days from this order, and no later than April 9, 2026.

Initial Disclosures commenced on January 8, 2026.  ECF 24.

The Further Case Management Conference set for July 9, 2026, at 2:00 PM in San Francisco - Videoconference Only is maintained.  Joint Case Management Statement due by July 2, 2026.

This Order resolves ECF 14.

IT IS SO ORDERED.

Dated: March 25, 2026

TRINA L. THOMPSON
United States District Judge